IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KISANO TRADE & INVEST LIMITED and TRASTECO, LTD., | ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | Civil Action No. 11-852 Judge Schwab |
| DEV LEMSTER and STEEL EQUIPMENT CORP., | ) ) ) | Magistrate Judge Mitchell |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion to dismiss or, in the alternative, to strike and sever (ECF No. 4), filed on behalf of the defendants, be denied.

II.     Report

Plaintiffs, Kisano Trade & Invest Limited ("Kisano") and Trasteco, Ltd. ("Trasteco"), bring this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (RICO), and state law against the Defendants, Dev Lemster ("Lemster") and Steel Equipment Corporation ("SEC"). The Complaint alleges that SEC, a company that buys and sells used steel-making equipment, engaged in four acts of fraud thorough Lemster, its owner, in which it made "secret" arrangements with third parties that adversely affected Plaintiffs' contracts with those parties and that Defendants breached their fiduciary duties and were unjustly enriched by their actions.

Currently pending before the Court is a motion filed by the Defendants. They argue that the complaint should be dismissed for failure to state a claim or, in the alternative, that certain portions of the complaint should be stricken and that the remaining claims should be severed

because they relate to separate and distinct Plaintiffs, differ in their legal theory and concern events that took place at different times. For the reasons that follow, the motion should be denied.

Facts

Kisano is a corporation organized under the laws of the Republic of Cyprus. (Compl. ¶ 6.) Trasteco is a limited liability company organized under the laws of Malta (Compl. ¶ 7.) The relationship alleged between Kisano and Trasteco is that George Svishchov, a citizen of Ukraine, assisted both organizations in the business dealings at issue. (Compl. ¶ 9.) SEC is a Pennsylvania corporation with a principal place of business in Pittsburgh, Pennsylvania. SEC buys and sells used steel-making equipment and provides advisory, appraisal and consulting services. It is owned by Lemster, a citizen of Pennsylvania. (Compl. ¶¶ 10-11.)

Plaintiffs allege that Defendants engaged in four acts of fraud as follows:

1) On December 20, 2004, Trasteco entered into a contract with Winding Gulf, LLC ("WG"), based in North Carolina, to purchase 120,000 metric tons of metallurgical coal at $120 per ton to ship to Ukraine. Unbeknownst to Svishchov or Trasteco, on January 11, 2005, WG entered into a secret agreement to pay SEC $2 per ton as Trasteco's "buyer's agent" and WG increased the prices to cover its commission to SEC (the "Trasteco Secret Deal"). SEC and Lemster bribed Akiva Sapir, an Israeli attorney/businessman who represented owners of a steel mill in Ukraine, to "improperly influence" decisions made by Trasteco with the advice he gave to Svishchov. (Compl. ¶¶ 16-23.)

2) On August 2, 2007, Kisano, following Lemster's advice, entered into a contract with WG to purchase 2 vessels of coal at $117.50 per ton and in September and October 2007, Kisano (again following Lemster's advice) amended the agreement to add 8 more vessels of coal, with

price levels escalating to $128 per ton. Unbeknownst to Svishchov and Kisano, on August 28, 2007, WG entered into a secret agreement to pay SEC $5 per ton as Kisano's "buyer's agent" and WG increased the prices to Kisano to cover this commission (the "Kisano Secret Deal"). Again, SEC and Lemster bribed Sapir to "improperly influence" decisions made by Kisano with the advice he gave to Svishchov. (Compl. ¶¶ 25-32.) Plaintiffs first learned of the Trasteco and Kisano secret deals on March 13, 2010 when WG produced documents in litigation in the Southern District of West Virginia called <u>Kisano Trade and Invest Limited v. Winding Gulf Coal Sales</u>, No. 2:09-0804. (Compl. ¶¶ 24, 33.)

3) Plama, Ltd. ("Plama") was a limited liability company organized under the laws of Malta. Svishchov acted on behalf of Plama. Plama sought to dismantle the equipment of a steel making plant in Warren, Ohio (the "Warren Plant") and ship it to Ukraine. In August 2005, Plama entered into a contract with Williams Industrial Services, Inc. ("WIS") to dismantle the Warren Plant for $6,230,750 and on September 22, 2005, Plama entered into another contract with WIS to ship the dismantled equipment of the Warren Plant to Ukraine for $3,646,100. Unbeknownst to Svishchov or Plama, WIS entered into secret deal to pay SEC a 15% commission for ensuring that Plama awarded the contracts to WIS and WIS inflated the prices to cover SEC's commission (the "Plama Secret Deal"). Again, Lemster bribed Sapir to "improperly influence" Plama to award the dismantling and shipping contracts to WIS. (Compl. ¶¶ 35-48.) However, Plaintiffs note that Plama has been dissolved and state that they are not bringing claims on behalf of Plama. (Compl. ¶ 35 n.1.)

4) After Plama canceled the dismantling and shipping contracts in November 2005, Sapir informed Lemster that the Warren Plant would be reopened and Boris Bannai ("Bannai") was entrusted with reopening the plant. An adjacent Water Treatment Facility was essential for

operation of the Warren Plant. This facility was owned by Veolia Water North America ("Veolia"). Lemster knew that Veolia did not wish to operate the Water Treatment Facility for the Warren Plant and wished to sell it. On November 29, 2005, SEC secretly executed a purchase agreement for the Water Treatment Facility for $375,000, but did not close on the purchase agreement. Instead, in December 2005, Lemster secretly proposed to Veolia that they "jointly" market the Water Treatment Facility. In February 2006, SEC and Veolia secretly agreed to share 50/50 in any amounts above a $375,000 sale price for the Water Treatment Facility (the "Veolia Secret Deal"). In April 2006, a company controlled by Bannai purchased the Water Treatment Facility for $650,000 and then resold it to the Warren Plant (Warren Steel Holdings, Inc.) for the same price. Lemster and Sapir encouraged Bannai to pay $650,000 for the Water Treatment Facility, while concealing that Veolia was willing to sell the facility for $375,000. SEC bribed Sapir to "improperly influence" Bannai to buy the Water Treatment Facility and to conceal the secret deal from Bannai and Svishchov. (Compl. ¶¶ 49-57.) As with the third fraud, Plaintiffs do not allege any connection with Bannai and do not seek any damages on his behalf with respect to this series of events. They indicate that they recite these allegations to further support their RICO claim of a pattern of racketeering activity involving "multiple schemes."

Procedural History

Plaintiffs filed their complaint on June 28, 2011. Federal question jurisdiction is invoked for the RICO claim in Count I, 28 U.S.C. §§ 1331, 1337(a) and 18 U.S.C. § 1964(c); and diversity of citizenship jurisdiction is invoked for the state law claims in Counts II-IV, 28 U.S.C. § 1332(a)(2), because the actions are between citizens of foreign states and citizens of Pennsylvania in which the amount in controversy exceeds the sum of $75,000, exclusive of

4

interest and costs. Count I alleges that Lemster violated RICO § 1962(c) by conducting the affairs of SEC through a pattern of racketeering activity, specifically by engaging in acts of mail fraud, wire fraud and bribery, which caused injury to Trasteco in its 2004 contract with WG and to Kisano in its 2007 contract with WG. Count II alleges that Lemster and SEC tortiously interfered with the contracts between WG and Trasteco and Kisano. Count III alleges that Lemster and SEC were unjustly enriched by their actions. Count IV alleges that Lemster and SEC breached their fiduciary duties and improperly used confidential information and relations.

On July 18, 2011, Defendants filed a motion to dismiss or, in the alternative, to strike and sever (ECF No. 4). Plaintiffs submitted a response on August 9, 2011 (ECF No. 10). Defendants filed a reply brief on August 23, 2011 (ECF No. 12) and Plaintiffs sought and obtained leave to file a sur-reply brief, which they filed on August 29, 2011 (ECF No. 14).

In the motion to dismiss, Defendants argue that: 1) Plaintiffs have filed to plead predicate acts of "racketeering activity"; 2) Plaintiffs have not alleged a "pattern of racketeering activity"; 3) Plaintiffs have not stated a claim for intentional interference with contractual relations and even if they had, they allege that Defendants were acting as their agents and a corporation cannot interfere with a contract to which it is a party; 4) Plaintiffs have failed to allege a claim for unjust enrichment because they have not alleged why it would be inequitable for SEC to retain commission payments paid by WG and other elements; and 5) Plaintiffs have not stated a claim for breach of fiduciary duty because they have not alleged the existence of a confidential relationship between either Trasteco or Kisano and the Defendants.

Plaintiffs respond that: 1) they have identified predicate acts of bribery (to which no heightened standard of pleading applies) as well as predicate acts of mail fraud and wire fraud that meet the heightened pleading standards of Rule 9(b); 2) they have alleged a pattern of

5

racketeering activity, both closed and open ended; 3) they can allege that agents acted outside their roles and interfered with contracts of their principals; 4) they have alleged that Defendants cannot equitably retain the money they were paid; and 5) they have pleaded the existence of a confidential relationship as well as another breach of fiduciary duty arising out of Defendants' abuse of confidential information with which they were entrusted.

Standard of Review

The Supreme Court recently issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009), the Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face.") (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (citations omitted). Mere "possibilities" of misconduct are insufficient. <u>Id.</u> at 1949-50. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief.". . . In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

6

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted). In alleging fraud, a plaintiff must state with particularity the circumstances constituting the fraud. Fed.R.Civ.P. 9(b).

The Court of Appeals for the Third Circuit has held that: "Although a district court may not consider matters extraneous to the pleadings, 'a document <u>integral to or explicitly relied</u> upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). In addition, in a RICO case, the court may consider the RICO Statement together with the complaint in assessing a motion to dismiss. Glessner v. Kenny, 952 F.2d 702, 712 n.9 (3d Cir. 1991), overruled on other grounds, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995).

<u>Count I: RICO Claim</u>

In Count I, Plaintiffs assert a RICO violation under Subsection (c), which provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). A "violation of § 1962(c) requires... (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. vs. Imrex Co., 473 U.S. 479, 496 (1985). Racketeering activity includes "any act which is indictable" under several provisions of the federal crimes code, 18 U.S.C. § 1961(1), and also certain state laws. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). Plaintiffs allege conduct in the form of predicate acts of mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; and bribery under

7

Pennsylvania law, 18 Pa. C.S. § 4108. The enterprise that Lemster conducted was SEC.

Defendants argue that Plaintiffs have failed to state a cause of action under RICO because they have not met the heightened pleading standard of Rule 9(b) for predicate acts of mail fraud and wire fraud and because they have not alleged a pattern of racketeering activity.

The Court of Appeals has stated that:

> Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.

Lum, 361 F.3d at 223-24 (other citations omitted).

Plaintiffs respond that they have pleaded multiple acts of bribery by Sapir, in violation of 18 Pa. C.S. § 4108, and argue that Rule 9(b) does not apply to bribery. Abels v. Farmers Commodity Corp., 259 F.3d 910, 919 (8th Cir. 2001); District 1199P Health & Welfare Plan v. Janssen, 2011 WL 1086004, at *14 (D.N.J. Mar. 21, 2011). In addition, they argue that they have sufficiently alleged predicate acts of mail and wire fraud to satisfy Rule 9(b) by setting forth the specific nature of the fraudulent scheme, listing five specific acts of mail and wire fraud and bribery from January to September 2005, and connecting Lemster's conduct to the fraud. They also contend that they have adequately alleged a pattern of racketeering activity, showing both closed and open-ended continuity.

8

Predicate Acts

With respect to the Trasteco Secret Deal, the complaint alleges the following acts of mail and wire fraud and bribery from January to September 2005:

> January 11, 2005 letter from WG to SEC memorializing the secret commission agreement on the Trasteco Secret Deal;
>
> February 21, 2005 email from Sapir to Lemster with banking wire details in order to receive bribe payments;
>
> February 23, 2005 $260,000 wire from WG to SEC's National City Bank account as the $2 per ton commission on the deal;
>
> September 23, 2005 $130,000 international bank wire bribe payment from SEC to Sapir's account at Banco de Andalucia in Marbella, Spain.

(Comp. ¶ 64.)

With respect to the Kisano Secret Deal, the complaint alleges the following acts of mail and wire fraud and bribery from August 2007 to February 2008:

> August 28, 2007 letter from WG to SEC memorializing the secret commission agreement on the Kisano Secret Deal;
>
> October 26, 2007 email from Lemster to WG telling WG to set price at $128 per ton and "explain" the increased price is due to increased rail freight and loading costs, and setting secret commission at $5 per ton for Vessels 4 and 5, and $5.25 per ton for Vessels 6 through 10;
>
> November 6, 2007 SEC wired a bribe of $249,101.90 to Sapir's account at LGT Bank Liechtenstein;
>
> February 13, 2008 SEC wired a bribe of $267,083 to Sapir's account LGT Bank Liechtenstein.

(Comp. ¶ 65.)

With respect to the Plama Secret Deal, the complaint alleges the following acts of wire fraud and bribery from September 2005 to September 2006:

> September 26, 2005 $23,302.15 wire from SEC via international bank to Sapir's account at Banco de Andalucia in Marbella, Spain;

9

> November 9, 2005 $27,345.75 wire from SEC via international bank to Sapir's account at Banco de Andalucia in Marbella, Spain.
>
> September 27, 2006 $23,400 international wire to Sapir's account at Banque de Geston De Rothschild in Monaco.

(Comp. ¶ 66.)

With respect to the Veolia Secret Deal, the complaint alleges the following act of wire fraud and bribery on July 27, 2006:

> July 27, 2006 $23,400 wire from SEC to Sapir's bank account at Banque du Geston De Rothschild in Monaco as his "share" of the Veolia Secret Deal.

(Comp. ¶¶ 57, 67.)

Plaintiffs have pleaded multiple acts of bribery by Sapir, and have sufficiently alleged predicate acts of mail and wire fraud to satisfy Rule 9(b) by setting forth the specific nature of the fraudulent scheme, listing five specific acts of mail and wire fraud and bribery from January to September 2005, providing the "date, place or time" of the fraudulent conduct, and connecting Lemster's conduct to the fraud. Defendants' argument to dismiss the action on these grounds is unavailing.

<u>Continuity Requirement</u>

A claim alleging a pattern of racketeering under § 1962(c) requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. <u>Annulli v. Panikkar</u>, 200 F.3d 189, 198 (3d Cir. 1999). The Supreme Court has held that:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept-and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-42 (1989) (citations omitted). The Court of Appeals has rejected periods of time of one year or less as establishing a closed period of continuity. Hughes v. Consol-Pa. Coal Co., 945 F.2d 594, 610 (3d Cir. 1991). See also Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (3d Cir. 1991) ("A short-term scheme threatening no future criminal activity will not suffice.")

Defendants contend that Plaintiffs have limited their pleading to open-ended continuity when they allege that "[t]he 'Illegal Scheme' was open ended in that Lemster and SEC would have continued to defraud companies managed by Svishchov but for the discovery of the secret deals." (Compl. ¶ 61.) Plaintiffs respond that they are alleging both closed and open-ended continuity: closed-ended because the acts involved the same purpose (secret deals), same results (secret commissions), same participants (Lemster, Sapir), same enterprise (SEC), same victims (companies which Svishchov assisted in their business dealing and which were owned by the same principal) from December 2004 to at least February 2008; and open-ended because the scheme would have continued but for Plaintiffs learning of it through discovery in the West Virginia case.

Defendants reply that the predicate acts do not involve similar purposes, results or

victims because the first two alleged schemes involved coal purchase contracts but the third scheme involved a dismantling contract and the fourth a water treatment plant purchase and the victims (Kisano, Trasteco, Plama and Bannai's unnamed company) are not the same. Defendants argue that, to the extent Plaintiffs argue that these companies are related, they do so based on an affidavit by Svishchov (which is attached to their brief in response) that contradicts Svishchov's testimony given in the West Virginia case, and they attach a portion of Svishchov's deposition in the West Virginia action to their reply brief to demonstrate that this is so.

Plaintiffs note that Svishchov was involved in the management of Kisano, Trasteco, Plama and Warren Steel Holdings, regardless of whether he was an employee, officer or director, and contend that this allegation is supported by numerous emails between Lemster and Svishchov evidencing his management role and the fact that Svishchov was listed as the contact for Kisano and Trasteco in the contracts with WG at issue.

The Court need not resolve the "sham affidavit" dispute and indeed, should not refer to an affidavit when resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). In any event, it is unnecessary to delve into this question because Plaintiffs' allegations certainly cite acts involving the same purpose, same participants and same enterprise (and the requirement is stated in the disjunctive—not all factors need be present). Merely because two contracts involved the purchase of coal and the others involved different transactions does not affect the allegation that the scheme in each act—to receive secret commissions for advice given—is the same.

Moreover, Defendants do not dispute that Svishchov was listed as the contact for both Kisano and Trasteco in their WG contracts. (ECF No. 14 Exs. A, B.) Thus, Defendants' predicate acts of racketeering are related because they all involved obtaining secret commissions

from contracts related to companies (namely, Kisano, Trasteco, Plama and Warren) in which Svishchov played some role on behalf of the same principal.

Finally, a plaintiff is permitted to plead "multiple schemes" which are not necessarily directed at that party, so long as one act injures the plaintiff and creates standing for it to sue. See Environmental Tectonics v. W.S. Kirkpatrick, Inc., 847 F.2d 1052, 1066 (3d Cir. 1988); Town of Kearney v. Hudson Meadows Urban Renewal Corp., 829 F.2d 1263, 1268 (3d Cir. 1987). Plaintiffs have met their burden of pleading continuity. Therefore, with respect to Count I, the motion to dismiss should be denied.

Count II: Intentional Interference With Contractual Relations

In Count II, Plaintiffs allege that Defendants interfered with their contractual relations with WG. Defendants contend that the allegations are insufficient to state a claim because Plaintiff do not allege that WG was prevented from performing its contractual obligations owed to Plaintiffs as a result of Defendants' conduct. Plaintiffs respond that, so long as their contractual relations were impaired, they can state a claim for relief. The parties agree that Pennsylvania law applies to this claim, as well as the claims in Counts III and IV. (ECF No. 5 at 8 n.4; ECF No. 10 at 14.)

The Court of Appeals has stated that:

> The Pennsylvania Supreme Court has explicitly adopted the standard of the Restatement (Second) of Torts § 766 (1979) for determining the elements for tortious interference with existing contractual relationships. United States Healthcare, Inc. v. Blue Cross, 898 F.2d 914, 925 (3d Cir. 1990); Silver v. Mendel, 894 F.2d 598, 601 (3d Cir.), cert. denied, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); Tose v. First Pa. Bank, N.A., 648 F.2d 879, 898 (3d Cir.), cert. denied, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 482 Pa. 416, 429-31, 393 A.2d 1175, 1181-83 (1978), cert. denied, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). The Restatement (Second) provides:
>
> > One who intentionally and improperly interferes with the performance of a

13

> contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.
>
> Thus, in order to prevail on her claim for intentional interference with a contract, [the plaintiff] must show that (1) she had a contract with [a third party], (2) [the defendant's] communications with [the third party] were intended to induce or cause [it] to break its contract with her, and (3) [the defendant] acted improperly. [The plaintiff] bears the burden of proving all three elements. See Buczek v. First Nat'l Bank of Mifflintown, 366 Pa. Super. 551, 557, 531 A.2d 1122, 1124 (1987).

Nathanson v. Medical College of Pa., 926 F.2d 1368, 1388 (3d Cir. 1991) (citing Adler, Barish, 393 A.2d at 1183) (footnote omitted).

Based upon this definition, Defendants contend that they did not interfere with Plaintiffs' contracts with WG because WG in fact performed its contractual obligations. However, Plaintiffs contend that the elements of tortious interference with contractual relations are as follows:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

Skiff re Business, Inc. v. Buckingham Ridgview, LP, 991 A.2d 956, 966 (Pa. Super. 2010) (citation omitted). As stated by Professor Prosser in his treatise on torts:

> It may be said that actual inducement [to breach] is not necessarily required at all and that interference with contract may be quite sufficient for liability, provided always that it causes harm and the interference was unjustified. Thus no actual repudiation of the contract is necessary for liability, and it is enough that the contract performance is partly or wholly prevented, or made less valuable, or more burdensome by defendants' unjustified conduct.

Prosser, Law of Torts, § 129 at 991 (5th ed. 1984).

Although no Pennsylvania court has cited this principle, courts in other states (which also

14

have adopted the Restatement section at issue) have done so. See Pacific Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 592 (Cal. 1990) ("Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations."); De Jur-Amsco Corp. v. Janrus Camera, Inc., 155 N.Y.S. 2d 123, 125-26 (N.Y. Sup. Ct. 1956)("there may be prima facie liability for interference with contract relations without inducing breach of contract by, for example, injuring persons under contract so that they are disabled from performing, or by destroying or damaging property which is the subject matter of a contract, or by doing other acts which make performance more burdensome, difficult or impossible or of less or no value to the one entitled to performance.") Plaintiffs have alleged that Defendants' actions made their contracts with WG more burdensome. Thus, they have stated a claim for tortious interference with contractual relations.

Defendants also argue that, because they were Plaintiffs' agents, they could not have interfered with their principals' contracts. The general rule is that corporate offices are immune from interfering with the contracts of their own corporation. Michelson v. Exxon Research & Eng'g Co., 808 F.2d 1005, 1007 (3d Cir. 1987).

Plaintiffs respond that they have alleged that Defendants were acting outside their duties as agents and improperly interfered with Plaintiffs' contracts. As such, tortious interference claims may be asserted against them. See American Trade Partners, L.P. v. A-1 International Importing Enters., Ltd., 757 F. Supp. 545, 555 (E.D. Pa. 1991) (when plaintiffs alleged that defendants acted in their personal capacities, without privilege, outside the scope of their authority, intentionally and improperly, a tortious interference claim could be stated against them); Alexander v. Pennsylvania Dep't of Banking, 1994 WL 144305, at *5-6 (E.D. Pa. Apr. 21, 1994) (plaintiff could sue bank's board members in their individual capacities for agreeing to

15

terminate him).

Thus, Plaintiffs have alleged that their contracts with WG were made more burdensome by Defendants' actions, which were improper and outside their authority as agents. Therefore, with respect to Count II, the motion to dismiss should be denied.

Count III: Unjust Enrichment

In Count III, Plaintiffs allege a claim of unjust enrichment. Defendants argue that, because the claim rests on the obtaining of money by alleged fraud, the claims must meet the standards of Rule 9(b) and fails to meet the particularity pleading requirement. Plaintiffs respond that they allege in the alternative that the claim arises out of Defendants' breach of fiduciary duty and as such it does not have to meet the requirements of Rule 9(b).

> The elements of unjust enrichment under Pennsylvania law have been defined as follows:
>
> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (citing Limbach Co. LLC v. City of Phila., 905 A.2d 567, 575 (Pa. Commw. 2006)). "Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993).

Plaintiffs have alleged that benefits (secret commissions) were conferred on Defendants under circumstances that would make it inequitable for Defendants to retain the benefits without payment of value (acting outside the scope of their agency and against the interests of their principal for personal gain). Therefore, they have stated a claim for unjust enrichment under

16

Pennsylvania law. Moreover, the claim is alleged to rest either on allegations of fraud or breach of fiduciary duty and as to the latter, Rule 9(b) does not apply. <u>Hartford Fire Ins. Co. v. Lewis</u>, 2009 WL 174105, at *2 (E.D. Pa. Jan. 21, 2009); <u>In re Fruehauf Trailer Corp.</u>, 250 B.R. 168, 197 & n.26 (D. Del. 2000). As to Count III, the motion to dismiss should be denied.

<u>Count IV: Breach of Fiduciary Duty</u>

In Count IV, Plaintiffs allege that Defendants breached their fiduciary duties by engaging in secret contracts. Defendants argue that Plaintiffs cannot point to a confidential relationship between them and Kisano or Trasteco. Plaintiffs respond that the reference to confidential relationships is not on point and that Defendants breached their fiduciary duties in two ways: as agents who profited from their secret deals and as recipients of confidential information that they abused.

Judge Standish recently observed that:

> An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship. Restatement (Third) of Agency, § 8.01 (2006). An agent's specific duties of loyalty include a duty to refrain from competing with the principal and from taking action on behalf of, or otherwise assisting, the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party. Restatement (Third) of Agency, §§ 8.04 and 8.05 (2006).

<u>Frontier Constr. Co. v. Mazzella</u>, 2009 WL 3806754, at *4 (W.D. Pa. Nov. 13, 2009). Plaintiffs have alleged that Defendants, although they were supposed to be acting as Plaintiffs' agents, breached their duty of loyalty by using confidential information for their own purposes and by profiting from secret deals at the expense of their principals. Defendants' citation to cases concerning whether one party controlled another sufficiently to make that party a fiduciary for its affairs are irrelevant to this situation involving alleged misuse of confidential information by an agent. Plaintiffs have stated a claim for breach of fiduciary duty. Therefore, with respect to

17

Count IV, the motion to dismiss should be denied.

Motion to Strike and Sever

In the alternative, Defendants move to strike paragraphs 35-57, 66-67 and portions of paragraphs 69-70, which relate to the Plama Secret Deal and the Veolia Secret Deal, on the grounds that such allegations concern non-existent or non-named entities that are not parties to this action and for which no claims have been pleaded. Plaintiffs respond that these allegations are relevant to the RICO claim and further support a pattern of racketeering activity involving multiple schemes.

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "While courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted). See also Lakits v. York, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).

The allegations concerning the fraud with respect to the Plama Secret Deal and the Veolia Secret Deal are relevant to the RICO count. As noted above, Plaintiffs are not limited to the predicate acts directed at them, but may allege multiple schemes. Environmental Tectonics, 847 F.2d at 1066; Town of Kearney, 829 F.2d at 1268. Nor have Defendants explained how they will be prejudiced by the presence of these allegations in the complaint. Therefore, the motion to strike should be denied.

Finally, Defendants request that Kisano's claims be severed from Trasteco's pursuant to Fed.R.Civ.P. 21 because they constitute two "litigable events" that cannot be joined together in

one action under Fed.R.Civ.P. 20(a). Plaintiffs respond that their claims meet the standard for permissive joinder and should not be severed.

Federal Rule of Civil Procedure 20(a) governs permissive joinder and provides that:

Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed.R.Civ.P. 20(a)(1). In conjunction with Rule 20(a), Rule 21 provides that: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "Thus, plaintiffs must show both that their claims arise out of the same transaction(s) or occurrence(s) and that a question of law or fact common to all joined parties will arise." Miller v. Hygrade Food Prods. Corp., 202 F.R.D. 142, 144 (E.D. Pa. 2001) (citation omitted). As a general matter, joinder is strongly encouraged. Hagan v. Rogers, 570 F.3d 146, 152 (3d Cir. 2009).

As noted above, Plaintiffs have alleged that their claims arise out of the same transactions or occurrences, namely multiple schemes by Defendants to obtain secret commissions on contracts for which they were supposed to be acting as Plaintiffs' agents. In addition, the same questions of law will be presented by both claims. Defendants cite Blood v. Federal Bureau of Prisons, 2009 WL 1118471 (M.D. Pa. Apr. 24, 2009), aff'd in part and dismissed in part, 351 Fed. Appx. 604 (3d Cir. Nov. 9, 2009), in which the court held that joinder of two inmates' claims relating to staff opening their legal mail was impractical because the occurrences were separate. Defendants have not explained how that case relates to a RICO claim, which

19

necessarily involves multiple predicate acts and can involve multiple schemes. Therefore, the motion to sever should be denied.

For these reasons, it is recommended that the motion to dismiss or, in the alternative, to strike and sever, filed by the defendants, be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: September 27, 2011